We'll hear argument first this morning in Case No. 17-1272, Schein v. Archer & White Sales. Mr. Shanmugam. Thank you, Mr. Chief Justice, and may it please the Court. The Federal Arbitration Act requires courts to enforce arbitration agreements according to their terms. This case involves a straightforward application of that principle in the context of arbitrability, specifically where the parties have agreed to delegate to the arbitrator the authority to decide whether claims are subject to arbitration. Where the parties have so agreed, the Arbitration Act requires a court to honor that agreement. A court does not have the power to decide the issue of arbitrability for itself and to short-circuit the arbitrator's ability to do so. Mr. Shanmugam, can we back up and have you explain why we even get to a question, the question presented, because Schein has no arbitration agreement with Archer. So how – what is this agreement? It's not between Archer and Schein. How does Schein get to claim the benefit of an agreement Schein did not make? Justice Ginsburg, there is a question in the case concerning nonparties. The agreements in question are agreements with some of the defendants, not all of them. And so, therefore, as to the non-signatory defendants, there is a question reserved by the court of appeals about the doctrine of equitable estoppel, and that would be an issue for the court of appeals to address on remand if this Court agrees with us on the question presented. That is obviously a discrete issue, not reached by the court of appeals in the decision below, and, again, an issue that would be open on remand. But on the question presented, I think our submission is quite straightforward. The wholly groundless exception on which the court of appeals relied has no footing in the text of the Arbitration Act. Where the parties have agreed to delegate the issue of arbitrability to the arbitrator, the merits of that issue are for the arbitrator and wholly for the arbitrator to decide. Sections 2, 3, and 4 of the Arbitration Act all point in the same direction. Where you have a valid delegation, that is treated, as this Court has indicated, like an antecedent agreement to arbitrate. And all there is for a court to do is to determine, first, that that provision is itself valid, and, second, to determine whether the opposing party is, in fact, resisting the enforcement of that provision. Roberts. I'm not sure your answer to Justice Ginsburg is totally responsive. The question of whether or not there is a valid arbitration agreement between the parties is antecedent to an order compelling arbitration. The court makes that decision. And I wonder why this isn't a similar question. I mean, your friend on the other side makes the argument that, well, parties would not have agreed to submit wholly groundless questions to the arbitrator. And so you should treat it as the same type of question. So, Mr. Chief Justice, I think there are two parts to your question. First, to pick up on my response to Justice Ginsburg, we are certainly not disputing that the issue of equitable estoppel, the issue of which parties are bound, is an issue that goes to validity. It's an issue for the Court to decide. So, again, on remand, that would be a question for the court of appeals in the first instance. The court of appeals explicitly did not reach that question because of its holding on the wholly groundless exception. It said that the requirement that arbitrability goes to the arbitrator was not enforceable as to anyone, even as to the signatories to the agreement. I think as to the second part of your question, again, we think that the question of whether or not there is a valid agreement more generally is a question for the court. And so if, for instance, there were some question about the validity of the delegation provision, say a question about whether the delegation provision is itself unconscionable, that would again be a question for the court to decide. But I think that on the issue of arbitrability, this Court has said time and again, most recently in the first options case, that arbitrability can be delegated where there is a sufficiently clear delegation. And once the issue is delegated, it is for the arbitrator. The question of the question. Ginsburg. Well, the clear and unmistakable delegation, why can't it be both? That is, that the arbitrator has this authority to decide questions of arbitrability, but it is not exclusive of the court. We have one brief saying that that is indeed the position that the restatement has taken. So all of the courts of appeals to have considered the issue have held that this type of incorporated delegation meets this Court's requirements. And let me explain why that's true, even though, again, that's an issue outside the scope of the question presented. We certainly think it would be appropriate for this Court to provide guidance on that issue, but the Court certainly does not have to reach it if it so chooses. What is going on in this case, if you look at the four corners of the arbitration agreement, and I would point the Court in particular to page 58 of the joint appendix or to page 8 of our brief, is that the arbitration agreement by its terms incorporates the rules of the American Arbitration Association, and it does so very clearly. That is a quite common arrangement, particularly in commercial arbitrations like the one at issue here. Then if you take a look at the rules of the American Arbitration Association, those rules, and in particular Rule 7a, clearly give the arbitrator the authority to decide arbitrability. And under this Court's decision in first options, the relevant inquiry is whether or not the parties were willing to be bound by the arbitrator's determination on the issue in question. And so with all due respect to Professor Berman and his amicus brief, the position that he propounds has been rejected by every court of appeals to have considered this issue. And if the Court has any interest in this issue, I would refer the Court to the very thoughtful opinion of the Tenth Circuit in the Belknap case, which discusses this issue in some detail. Again, the Fifth Circuit in the decision under review ultimately did not decide that question. It did discuss that question. And I would respectfully submit that its discussion on that issue was somewhat confused. The Fifth Circuit seemed to think that because there was a substantive carve-out from the scope of arbitration here, that's the very carve-out that's in dispute for actions for injunctive relief, that that somehow had a bearing on the validity of the delegation here. But I think with all due respect the District Court made, decided on alternative grounds. It wasn't the District Court's first decision that this contract did not have a sufficiently clear and unmistakable delegation? Yes, that is correct. And the Fifth Circuit then discussed the issue, but ultimately did not rest on it. And once again, this is a discrete question. It's outside the scope of the question presented. But I would respectfully submit that I think that the law on this issue is quite clear, and that in particular, to the extent that the District Court discussed this issue, Justice Ginsburg, its reliance and Respondent's reliance on this substantive carve-out cannot be correct. In other words, the Respondent's submission below, and really I think Respondent's only submission on this issue, was that because there is a carve-out from the scope of arbitration, that somehow defeats the incorporation of the AAA rules which provide that arbitrability can be decided by the arbitrator. But that is the very issue that the parties agreed for the arbitrator to decide. And I think it would improperly conflate the question of what is subject to arbitration with the question of who decides to say that that defeats arbitrability here. Sotomayor, you just said the parties agreed to have the arbitrator decide this issue. Assume the Douglass, facts of the Douglass case. Plaintiff or petitioner signed a arbitration agreement over an account, and the account was closed within a year, and years later, sues the bank for some malfeasance by a lawyer who took money from a different account or something like it. I think I'm getting the facts of Douglass. And the court and the arbitrator there improperly assumes jurisdiction. There's been a delegation. What are the – what are the potential outs for the party who's now been stuck in an arbitration that legally is wholly groundless? The arbitrator made a mistake. So, Justice Sotomayor, let me address, you know, both that and the related question of what remedies are available to the arbitrator and to the opposing party more generally in the event that a truly frivolous claim of arbitrability is raised. I think to address your question directly, first, I think in a case where an arbitrator reaches an improper conclusion on arbitrability, the remedies, if any, would be those that would be available to the parties who are in the lower courts to review arbitrations more generally. And as this Court is well aware, there is a very live dispute in the lower courts about the extent to which courts can review the merits of arbitrators' decisions and whether they can be reviewed for a manifest disregard. That is an issue that this Court has left open. But I think that that would potentially be available, and lower courts have said that that is available where an arbitrator reaches a wildly incorrect decision on arbitrability. I think that to the extent that the other side points to the Douglas case as sort of the flagship example of a meritless claim of arbitrability being raised and the dangers of committing. Sotomayor, at least on the express terms of enforcing an arbitration award under the statute, there is no remedy for that Douglas party. Well, there is potentially review or manifest disregard. If we accept manifest disregard. Yes. We haven't done that yet. But which is to say which is to say which is to say which is to say that it's no different from review where an arbitrator reaches a wildly incorrect conclusion on the merits of an arbitral award. In other words, arbitrability is in the same bucket as any other issue that is properly remitted to the arbitrator. Review, if any, would be under section 10 of the Arbitration Act. Do you think that it could be the arbitrator exceeding their powers? Well, it could be. And I think that if you look at the lower courts that have reviewed arbitrability determinations, some of them have located review in exceeds powers in section 10A4, though even those courts have engaged in pretty deferential review. I think as a practical matter, it's basically the same review as manifest disregard review, and it certainly is not the sort of de novo review that Respondent seems to contemplate. Sotomayor, can you understand the common sense resistance to the idea that if a party has not agreed to arbitrate a particular issue because it's wholly groundless, there is no way that an arbitrator could, in good faith and without error, reach a conclusion that arbitration was agreed to, it seems counterintuitive to believe that we're sending a party to arbitration to potentially go through the expense of arbitration when something's wholly groundless, and then potentially not to have an avenue of relief when it comes to enforcing the arbitration award. Justice Sotomayor. That's why – I'm sorry. That's why I think one of the amici said the courts are not understanding that at the core, this is always about have you agreed to arbitrate an issue? And if you haven't, you shouldn't be forced to. Justice Sotomayor, I'm sorry to have interrupted, but two points in response to that. First, I think it's important to the extent that we're talking about the party's intent to recognize that the party's intended for the arbitrator to decide arbitrability. There was no carve-out, explicit or implicit, for wholly groundless claims, which is to say that whereas here you have a dispute of this variety, you have one party saying that the claim of arbitrability is wholly groundless, you have the other party saying not only is it not wholly groundless, we believe we have a valid argument about the construction of the carve-out. The parties agreed to have the arbitrator be the decision-maker, and I don't think with all due respect to Respondent, who feints in this direction, that there is any way to reform the incorporated delegation here to create a carve-out, to create a carve-out for wholly groundless claims, to say that the party somehow implicitly agreed that the arbitrator would decide arbitrability unless the claim was somehow wholly groundless or that there would be some preliminary determination by the district court. Now, I do think that this is a case where we said we're not going to treat these delegation clauses in exactly the same way as we treat other clauses. And there was an idea that people don't really think about the question of who decides, and so we're going to hold parties to this higher standard, the clear and unmistakable intent standard. And wouldn't the same kind of argument be true here, that the parties never really considered who was going to decide these groundless claims of arbitrability, or maybe if they did consider it, they would have thought that it was a pretty strange system to send it to an arbitrator just so that the arbitrator could send it back to the court, so that we are going to, you know, to say that there's a special rule in interpreting these kinds of clauses? Justice Kagan, there is obviously an interpretive rule that requires clear and unmistakable evidence that the parties intended to delegate the issues. But I would respectfully submit that once you have that evidence, that rule falls out of the equation. And again, with the other case, the model case is this Court's Brenta Tarr decision. And then the clause said the arbitrator, not the court, has exclusive authority. And here we are missing both the arbitrator to the exclusion of the court and the arbitrator has exclusive authority. It's nothing like that. I think, Justice Ginsburg, if you take a look at page 946 of this Court's opinion in First Options, it focuses on the willingness of the party to be bound by the arbitrator's decision. And I think with all due respect, we have that here. And I think that what you cannot do, I would respectfully submit, is to say that the parties implicitly countenanced a regime where the district court would make a preliminary determination. With respect, Justice Kagan, I think your question assumes that the claim of arbitrability is wholly groundless. That is the very merits dispute between the parties. We believe that we have the claims at issue are arbitrable and Respondent disagrees with that. And once that is true, this is a merits issue for the arbitrator to decide. And the parties ---- Breyer, what's wholly groundless? Is he saying what's wholly groundless is the claim that arbitrability is to be decided by the arbitrator? No. It's the claim that these substantive claims are subject to arbitration. And that is an issue on which the magistrate judge disagreed. The magistrate judge concluded that we had a plausible construction of this agreement.  Breyer, so you say step one, is there clear and unmistakable evidence that an arbitrator is to decide whether a particular matter X is arbitrable? Is that right? Yes. And step two, the answer to the first question is yes. They did decide that clearly and unmistakably. And now we see if, why not send it to them? Or it's totally groundless, we still won't send it to them. That's this case, right? That is the regime that Respondent is advocating here. I would like to say a little bit about why we think that. Well, I have a question about it. Sure. You say when you get to step two, once we're there, now there is no wholly groundless exception. Go send it to the arbitrator. Is that right? That is correct. Okay. Now, suppose it's really weird. I mean, you want to say no exception at all? He says my claim here is a Martian told me to do it. Okay? Are you saying no matter what, even if he has to read the word yes in the contract to mean no, never, under no circumstances, is there no exception no matter what? Yes. And picking up on Justice Breyer's question, there is no exception no matter what, but there are remedies available where a party makes a truly frivolous claim. What? First, it is agreed that the arbitrator has the ability to impose a wide range of sanctions on a party that is making a frivolous argument. Those sanctions are comparable to the sanctions that a court can impose in litigation. And it may also be true that the court — The arbitrator, by the way, loves Martians. Well — So what they're worried about is that they're going to get a bad decision on this ridiculous claim. Well, going back to the very early days or the relatively early days of this Court's FAA jurisprudence, this Court made clear in Shearson-Lehman that we presume that arbitrators are fair, impartial decision-makers. Well, they may or may not love Martians, but do you think it's fair to say that they love arbitration? So they're not probably very much inclined to sanction parties who bring arbitrable disputes to them? They actually do have specific and explicit remedies under their rules for providing — for imposing sanctions, including cost and fee shifting and the like. And it may very well be that after an arbitrator makes his or her determination that a district court would have the ability to impose sanctions under Rule 11 where the requirements of that rule are met. Well, how can you do that if the court can't even take a peek at the arbitrability question itself? How does the court all of a sudden have the power to sanction a motion to compel? At least before remitting the issue to arbitration, I think there would be a conflict between Rule 11 and the Arbitration Act if a court were to make a merits determination first. But I think after an arbitrator makes a determination, when the parties are back before the district court, I think the district court would have the ability to make the determination that the petition to compel arbitration was frivolous or broad.  Breyer. What is the advantage of this? Because remember step one. Step one is we have to decide, court were court, we have to decide whether there is a clear and unmistakable commitment to have this kind of matter decided in arbitration. Now, kind of matter. Now, you would have thought if you really have a Martian case, the judge would have found some way not to send it. And he would have said kind of matter. Well, not the Martian kind of matter. There is no clear and unmistakable commitment to send that kind of matter. In other words, if it's weird enough, you don't have to get beyond step one, because you can say there is no commitment to send this kind of matter. And now, what's the difference between that and what they did say? There is no commitment to send a groundless matter. But the whole point of the principle that the parties can delegate arbitrability to the arbitrator is that the parties can make a decision about who decides and where the party's intent is sufficiently clear that the arbitrator decides. Well, it's never sufficiently clear if the matter that they are deciding to arbitrate is a Martian matter. Unless they really said Martians, which I don't think would ever happen. In other words, if it is a totally ridiculous claim, shouldn't you have to find a clear and definite commitment to send a wholly ridiculous matter to the arbitrator? That goes to the merits. And wherever you set the bar, the fact remains that it is still a merits determination. And to the extent that this Court is concerned about this as a policy matter, and I would argue that there is not a lot of evidence to indicate that this is a problem, perhaps not surprisingly, because often the defendants bear the cost of arbitral proceedings, the regime that we are advocating is not only more faithful to the language of the Arbitration Act, it is a much more efficient regime. What about Section 4 of the Act, which Respondent points to as the front-end equivalent of what you alluded to in response to Justice Sotomayor's, the back-end Section 10 review? As this Court made clear — And the failure to comply therewith language in particular, which they focus on. What does that mean and what does that do? Sure. As this Court made clear in Prima Paint, that language limits a court's role in ruling on a petition to compel arbitration to reviewing the making and the performance of the agreement. And here the relevant agreement is the agreement to remit arbitrability to the arbitrator. And there is a failure to comply when the opposing party, the party that does not want arbitration, is resisting arbitration. That is all that is required. So what work does that language do? All that it requires. On performance. Give me an example of when that would have some effect, if there is one. Well, I think that all it requires a court to do, and this is a pretty minimal function, is to determine that you have one party that wants arbitration and another party that does not. That's what I thought you'd say, and that means in essence I think that that language in the statute does no work. Well, there has to still be a dispute, which is to say you've got to have one party That's covered by the beginning of the Section 4, though. Well, I don't think so. I mean, I think that that is the relevant failure to comply. A party aggrieved by the alleged failure or refusal to arbitrate. I'm just trying to figure out what failure to comply there with. I think both sides agree that those two things are essentially reinforcing, which is to say that when you have a party that resists arbitration, the moving party is aggrieved. And I think that Respondent recognizes in a footnote in its brief that aggrieved does no independent work beyond that. But I do think that the regime that we're advocating is a more efficient regime precisely because under Respondent's regime, a district court is supposedly making this threshold determination on whether or not the claim of arbitrability is wholly groundless. If a district court concludes that the claim is not wholly groundless, presumably the issue would then go to the arbitrator to make a plenary determination on that issue. And if the district court determines that the claim is wholly groundless, there will be appeals as of right immediately under Section 16 of the Arbitration Act. And that will lead to the very inefficiency that we see in this case. This case is certainly an outlier because it has taken so long. But we are now six years down the road still litigating the issue of arbitrability. Ginsburg. But that was the court's – I mean, the court to decide whether the motion was for the magistrate judge to reconsider or for the district court to review. That explains three of the six years of the delay, Justice Ginsburg. But I really don't think it can be reasonably disputed that if the issue of arbitrability had gone to the arbitrator in the first instance, as it should have, that we probably would be entirely done with this case. And, of course, our fundamental submission is that there is simply no footing in the text of the Arbitration Act for this exception. To the extent that the Court has questions about the delegation in this case, that is a discrete question that the Court need not reach here. And so we submit that on the question presented, the answer is quite simple. The FAA does not permit this exception, and therefore the judgment should be vacated. I'll reserve the balance of my time for rebuttal. Roberts. Thank you, counsel. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. Petitioner's position is at odds with the FAA's plain language and the party's obvious intent. Under section 4 of the federal statute, the FAA's position is contrary to Rent-to-Center. I don't believe so, Your Honor. So explain it to me, because I think Rent-to-Center said that that language is limited to was there an agreement between the parties and was there a delegation, and if there is, don't look to the merits. I don't see how determining whether something is wholly groundless is anything but a merits determination. Your Honor, it's what type of merits determination. Section 4's plain text authorizes the courts, and in fact instructs them, to have a gatekeeping function in looking at the merits of whether there's a failure to comply with the arbitration agreement. It says nothing at all about the failure to file a legitimate claim on the merits. So it draws a textual. Sotomayor, I'm sorry. Was there an agreement? There was an agreement. But Rent-to-Center, again, what they were talking about in that case is they're saying that if the underlying merits is frivolous, the underlying merits of the case, the actual lawsuit. Rent-to-Center didn't say that at all. Rent-to-Center said don't look at the merits at all. It didn't carve out a particular form of the merits. Well, I don't think Rent-to-Center, though, is saying that if there's only one possible outcome, then you should send it to the arbitrator anyway. And in fact, that would be inconsistent with what this Court did in Stolt-Nielsen. In Stolt-Nielsen, the parties expressly agreed that the arbitrator would decide if there's class arbitration. And the Court said the arbitrator applied the wrong analysis, and it did not send the case back to the arbitrator to do again. It said there is only one possible outcome, and so proceeded to decide the issue on its own. And that's consistent with general legal principles. If there is an absolutely futile claim, it makes absolutely no sense, there's no conceivable possibility that the arbitrator will say that this case belongs in arbitration. There's not a bona fide dispute. There's no point to sending it to the arbitrator. Breyer. Breyer. The problem is, and that's the problem with my prior suggestion, is really what Justice Sotomayor says. Once you look beyond the first question, did the parties agree to send this kind of dispute to arbitration? And then you start getting to the second question. Did they mean this kind, that kind? You're really deciding arbitrability. Courts will decide different things. Everybody will start making their arbitration argument. And even though it will save time in a handful of cases, time will be lost overall. So read it for what it says. It hands the decision to the arbitrator to make the arbitrability decision. What's wrong with that? There are a number of problems with that, Justice Breyer. The first is a textual problem. If there is no chance that the arbitrator will conclude, it's the Martian example, that this case is subject to arbitration, there is no possible failure to comply with the arbitration agreement. And that's what section 4 says. The court, before it can compel arbitration, it has to conclude there's a failure to comply. And if they look and there is no conceivable universe where this case belongs in arbitration, there's not a failure to arbitrate by filing in court. No one agreed to that. It's also inconsistent with the party's obvious intent. But doesn't that depend on the nature of the agreement as to arbitrability? What did the parties agree to have the arbitrator decide? Suppose you have an agreement that says the arbitrator has exclusive authority to decide all questions of arbitrability regardless of whether the claim of arbitrability has any merit whatsoever. What would you say then? I think that would be a highly unusual agreement. Alito, but what would you say? If the party said that, then I think you would have a failure to comply with that agreement. But the reason we don't see that is because no one agrees to be subjected to a needless and needlessly expensive given arbitration. But that's a question of the interpretation of this contract and the scope of what was delegated to the arbitrator. Well, but the scope of what was delegated, the question here is did the parties actually agree at the outset? Is there a clear and unmistakable showing that they intended to have an arbitrator decide a wholly groundless claim that has only one possible answer? Well, I thought the question we agreed to take was whether there's a wholly groundless exception when the parties have agreed that arbitrability will be decided by the arbitrator. Well, but I think there are two different things here, Justice Alito. One is, is there a general delegation clause, which again wasn't even found in this case. It comes to the Court assuming that there is one. And then the second is, if there is a general delegation clause, which is here, is incorporating the AAA rules, which is, Professor Berman pointed out, is a pretty tenuous hook to satisfy a clear and unmistakable standard, did the parties, when they said nothing else about it, really intend to be subjected to frivolous arbitration claims? Mr. Geiser, the problem is that you're taking the position here that this was wholly groundless to consider a mixed injunctive relief and damages claim as being covered by this arbitration award. The other side makes a very compelling argument that, no, there's actually a ground to say that injunctive relief goes to the court, but damages go to arbitrators. And when we have mixed claims, most courts will either send the matter to arbitration and stay the injunctive relief until the arbitration is over. If they determine that both can go simultaneously, they do it. But there are plenty of cases with mixed questions that courts handle all the time. My difficulty is that I don't know where to draw that line. I don't know where what's wholly frivolous to you may not be to someone else. And if there's been a true delegation, why shouldn't that go to the arbitrator? Don't go to the facts of this case. Let's assume a clear delegation, because I know you're making arguments about the ABA, but we didn't grant cert on that. I agree. Let's assume a clear delegation, but let's also assume a completely frivolous case that's baseless, maybe even abusive. Sotomayor No. Are you claiming, because you're arguing that this case is wholly groundless, because that's the ground that arbitration was not ordered by the court below. This is the quintessential case where most of these cases are on the margin. And I've actually gone and had the library do research. The number of wholly groundless cases is very small. So, you know, mistakes are made even by judges. So the fact that the four or five arbitrators who make a mistake, I don't know if that's statistically different than judges making mistakes. Your Honor, the wholly groundless doctrine is a very modest inquiry. All you need to do to satisfy, and with respect to my friend, it is not asking the court to decide the arbitrability determination. It's asking them to decide, is there a dispute over arbitrability, a bona fide dispute? Is it the court has to decide wholly groundless, so where do you draw the line between merely incorrect, groundless, wholly groundless? I think where the line is drawn is the way the courts of appeals have drawn it. Is there a bona fide dispute? If a court cannot identify any plausible or legitimate argument, it can be exceedingly weak, then it goes to the arbitrator because that's what the parties agree. Sotomayor, That's my problem in this case. It may be extremely weak, and I'm not sure that's true, but. Dreeben, Your Honor, respectfully, though, Petitioner sought review on one question, not two. They took their strategy. They did an all or nothing categorical attack, saying there is no wholly groundless doctrine under any circumstances. They could have added a second question saying if there is a wholly groundless doctrine, we don't think it was met here, but they didn't raise that question. Roberts, you seem to be just slicing the bologna a little thin. It's not just groundless, it's wholly groundless. And when you say, well, what's wholly groundless, you say, well, there's no bona fide dispute. You know, the answers about what the content of it is just sort of substitute one adjective for another, which I think highlights the problem, which is that, I mean, do you think there's a difference between groundless and wholly groundless? Dreeben, I think the difference is, is there a legitimate or plausible argument? Is there any argument on the other side of the ledger? And if there is, then the courts compel arbitration. So what standard should we say, wholly groundless or no bona fide dispute? I would say if there's not a bona fide dispute, then it goes to the arbitrator. I think that effectively, even though courts have used different articulations, that's where each standard points to. But what does even that mean? Clearly, there's a bona fide dispute when two parties are litigating all the way to the United States Supreme Court. Right? And so I know it's a small exception today, but the experience of this court has been when it creates small exceptions, they tend to become larger ones with time. And the whole point of arbitration, of course, is to try and streamline things. And having litigation all the way up and down the federal system over wholly groundless, only to wind up in arbitration ultimately seems highly inefficient. Isn't your real complaint here the first one, Justice Breyer's, and that there's just maybe a really good argument that clear and unmistakable proof doesn't exist in this case of a desire to go to arbitration and have the arbitrator decide arbitrability? And why does that take care of 90 percent of these kinds of cases? It may take care of a lot of them, and it will take care of it in this case if the circuit all but concluded that there's not. So why do we need to go down the bologna slicing road to mix my metaphors? Well, we suggested that the Court not grant review precisely because this is not a good vehicle for it, because there's not a clear and unmistakable showing in any possible way. But. So are you now saying we don't need to answer the question presented? No. And you give up and go back to the court of appeals on the first one? Absolutely not, Your Honor. I didn't think so. Absolutely not. Now, and just to show how little of a problem this causes in practice, this doctrine has existed for decades in multiple circuits, and it's rarely invoked because courts can understand the difference between something that is like a Rule 11 sanctionable argument and something that's a legitimate argument, and they've applied it faithfully. The Federal Circuit in Qualcomm, the Fifth Circuit in Kubala, they've made it absolutely clear you do not invade the province of the arbitrator. You make sure that there is literally no argument that supports it. Now, maybe you disagree, looking at the facts of this case, whether the standard was met. But the fact is that we didn't brief this because it's outside the question presented. The Texas district judge looked at it, three Fifth Circuit judges looked at it, and they all said there is no possible scenario where this will end up in arbitration. Sotomayor, we have a magistrate judge who disagreed, and we have other courts in other circuits, I'll bet, but we have other courts who have read it exactly the way they read it. And so it can't be wholly frivolous when you have so many people split on an issue. No, Your Honor. And just to be very clear on two things. The magistrate judge recognized that Petitioner's construction of the actual language of the agreement was problematic. That's at page 41A of the Petition Appendix. It said problematic. It rewrote the agreement to match what the magistrate judge thought would be a better arbitration clause. That's exactly what this Court has said that arbitrators can't do, and I don't see any license for a magistrate judge to be able to do it either. You have to apply the agreement as written. And for the other circuits that have looked at other clauses and say we can divide it up between injunctive relief and cases on the merits, those involved very different arbitration clauses. The language of those clauses were written in very different terms. They typically divided up one general delegation where everything goes to the arbitrator and then in a separate section or a separate sentence, at least, it carved out specific claims that sought injunctive relief. Here you have a parenthetical that says that if it's an action, not a claim, but an action seeking injunctive relief, it's excluded. Ginsburg. Well, what injunctive relief does Archer seek? We're told that what Archer wants most of all is money damages. And the courts could have or the parties could have written, at least the ones that had the arbitration clause, could have written this to say that the predominant relief is damages. It goes to the arbitrator. That's not what they wrote. Ginsburg. But what kind of injunctive relief, just let's take this down to the ground. Sure. They're seeking an injunction of anti-competitive conduct that has been investigated now by multiple State and Federal agencies and that we allege is ongoing today. So what they'd like to have happen is the anti-competitive conduct to stop. Now, if that goes to the arbitrator, that will multiply proceedings, because an arbitrator can't enforce their own award. They don't have an army. You need to get an award from the arbitrator saying we'll grant an injunction and get that enforced in court, where surely there will be more litigation in court. So it makes perfectly good sense that parties thinking in advance that they might need injunctive relief, they would not want to include to arbitration an action seeking injunctive relief. But to bring us back to the actual text of the statute, I suppose. On the text of the statute, you hang almost everything on the failure to comply therewith language. And you heard Mr. Shanmugam's response to that, that that's very much a minimal bar that is merely designed to ensure that someone's opposing the referral or opposing arbitration. What's your response to him? Respectfully, I think he's mistaken. When the plain language of the statute, which is imposing a direct gatekeeping function on the court, say they have to be satisfied there's been a failure to comply with the arbitration agreement. So from a common-sense perspective, does anyone think that you fail to comply with an arbitration agreement when the only conceivable outcome is the case belongs in court? It's effectively like saying a party has to go to the arbitrator and seek preclearance before they can file their claim, even if it's the Martian example, where there is no conceivable chance that the arbitrator, if they're genuinely construing the agreement, will say this belongs in arbitration. And that respectively just makes no sense, and especially makes no sense looking at the statutory design. Congress under section 10, and we do think section 10 provides a back-end safeguard here, that if an arbitrator takes the Martian case and they absolutely exceed their powers, they've adjudicated a dispute that the parties did not grant authority for the arbitrator to resolve, that would be an excess of authority. It makes no sense when Congress has that specific substantive check on the back-end. They've authorized the same judges to read the same agreement and make the same wholly Let's do it on the back-end and not on the front-end before we can save this huge and colossal waste of time and resources. Breyer. Just following me here is that Professor Berman, I thought, was writing an amicus brief on your side, which says there isn't a clear and unmistakable commitment to arbitration. But is that issue in front of us? It's – I think it's assumed in this case that there is, even though this Court has said that that might be a good point, but that's not in the case. So it's not in the case that there is, whether there is a clear and unmistakable arbitration. It's not in the case whether this was wholly groundless. And we're taking this case, assuming that there is such a thing as the unmistakable and assuming also that it is not wholly – it is wholly groundless, then is there an exception for the wholly groundless? So I'm not making an argument. I just want to be sure I'm right. We – that is, in fact, what the Court, I believe, is doing. And we would warmly – It's pretty theoretical, and that's an argument. We would warmly invite a dig if the Court would like to dig the case. But at the same time, though, we do think there is, in fact, a wholly groundless doctrine, just as there has been one for decades in the lower courts without any meaningful frustration of legitimate rights to arbitrate. Mr. Geiser, can I go back to Justice Kavanaugh's textual question? Because when I stare at this language, the failure to comply therewith language, it seems to me I can read it two ways, neither of which is yours. So the first way is Mr. Shanmugam's minimalist way. It doesn't mean very much of anything at all. The second way suggests that we've gone wrong in prior cases. It's the maximalist approach, which is what this language was meant to do was assign arbitrability issues to the courts. But we've pretty much – we've gone by that understanding of the language. What I can't understand is how you can read the language to create this halfway house position. Sure. And, Justice Kagan, first of all, I do think that actually the most faithful interpretation of this text is that it does assign to the courts the responsibility to decide the gateway issue. But that ship has somewhat sailed. I can't do that. But – I'm sorry? Keep going. The ship has sailed. We're agreeing that the ship has sailed. But I do think, though, just if you read the language sensibly, both looking at the actual text and looking at section 10, understanding that there will be this review on the back end, it only makes sense to say that there's not a failure to comply with an arbitration agreement if what the parties agreed is that if there's a legitimate dispute, there's a bona fide dispute, it goes to the arbitrator. If there's not a bona fide dispute, then there's no failure to comply by filing it in court. And I do think that you can't read that into the language of an ordinary agreement. Looking at all the contracts and all the cases that came up in this, I didn't see a single example where people said, we'll have a delegation provision, but no frivolous claims or no sham allegations. No one writes that into an agreement because it's presumed. But you – you seem to agree with Justice Kagan, I think, that the statute doesn't most naturally read create a wholly groundless exception with that language. It may have suggested the Court should decide questions of arbitrability. So we've – the Court's rejected that. So why create – I guess I'm repeating Justice Kagan's question, but why create this new thing out of a language that was not designed to do that? Well, Justice Kavanaugh, I don't think it's new at all. I think that it's very hard to say. It's new in the statutes, what I'm saying, in the sense that you had an all-or-nothing question, I think, with the statutory language, as Justice Kagan said, and the Court decided that. Well, I think – I think there are two ways to look at it. One is a statutory hook, which I still do think is the best way to read this language. It's very hard to understand how something is a failure to comply with an arbitration agreement if the arbitration agreement is saying if there's a bona fide dispute over arbitrability, then it goes to the arbitrator. If there's not a bona fide dispute over arbitrability, then you don't fail to comply by filing it in court. So it is, in fact, I think the wholly groundless doctrine that it's tapping on an intuition that's already there. It's just giving this language some sort of reading that makes sense and that's consistent with the party's intent. And that goes, again, to the interpretation of the delegation of arbitrability. As I understand your argument, you're saying that implicit in any provision of a contract that says arbitrability is for the arbitrator, there's the exception for this type of dispute. That's the argument, right? That is part of the argument, Your Honor. And the reason I think it's correct is that no one anticipates being dragged into an absolutely frivolous dispute. Good faith is inherent in every contract. That's a matter of North Carolina contract law, which is what this agreement is subjected to, and general contract principles. Alitoso, is that generally true when parties agree by contract on a particular decision-maker? What if it's a form selection clause? Is there an exception to that for wholly groundless disputes? No. I think a form selection clause, it would be slightly different because someone has to adjudicate the underlying merits, whether it's this judge or a judge in a different district. That's not true, though, with a wholly groundless arbitration demand. This is generating a pointless process. This is what happens when you file on a wholly groundless arbitration demand. Either it goes to the arbitrator, who wastes time and money, and it's far more than my friend suggests. It can take weeks or months and it can take tens of thousands of dollars to get this predicate threshold issue resolved. And then they send it right back to the court. Or even worse, they make a catastrophic error, and sometimes people make mistakes. They keep the case, and then the court vacates it at the end of the day under Section 10. And respectfully, that is not a sensible system. And to the extent my friend suggests that ways to police that are the arbitrator could say. Sotomayor, but is this a sensible system where, even though we only have five cases over a long period of time in which courts have denied arbitration on wholly frivolous grounds, we're now inviting this fight in every motion to compel arbitration. And that itself will multiply expenses, maybe not in your individual case, but as a burden on courts. So it's not clear to me that your solution is more efficient in a meaningful way. I think our solution is far more efficient, Your Honor, and if I could explain why. Only if you win. Well, if we win. If you win in court. Well, no, I think plaintiffs have an incentive to have their cases adjudicated. They're not the ones that are trying to invite protracted side litigation over issues. It's only the plaintiffs who actually think the arbitration demand is wholly groundless that will spend the resources to resist on that level. And I also think it's far more efficient for the court to decide this than the arbitrator. The court already has to look at the arbitration clause. It has to do that. Whatever Section 4 means, we can all agree that it does impose a gatekeeping function. The courts do have to look at something. So they're looking at the dispute already. All they need to do to resolve the wholly groundless inquiry is say, is there a dispute? They don't need to decide it. They're not resolving arbitrability. They say, is there any legitimate argument here that any reasoned decisionmaker could credit? If they identify that argument, they send it to the arbitrator. That is far more efficient than asking the parties to initiate a needless and needlessly expensive gateway arbitration when everyone knows the only two possible outcomes is they send it right back so you can start over in court months later, you know, possibly tens of thousands of dollars in the hole, or months or years later if the arbitrator makes a mistake and keeps it. So I don't think that is an efficient system. And I think, again, this doctrine has existed in courts, multiple courts, for decades without any noticeable effect on parties' legitimate arbitration rights. Kagan. Kagan. So could I go back beyond your saying it's not an efficient system? Are you saying essentially that the basis for this rule is that we don't believe that a delegation clause includes this, that we don't believe that the parties intended for a general delegation clause to include these kinds of groundless questions? Is that basically the idea? It's a contractual idea. Exactly. That is a core of the idea. Yes. But so, I mean, that might be a rule of contract interpretation here, but you are trying to say that the FAA, specifically section 4, sets up as a kind of substantive interpretive rule that we are going to interpret these contracts in a certain way. And that seems like a strange thing for us to think about the FAA. Oh, I don't think that's strange at all, Your Honor. In First Options and in Oxford or in Stolt-Nielsen, the Court specifically says that it crafts interpretive rules in the setting to match the parties' likely intent. So if the Court thinks that when parties are silent about what do you do with a wholly groundless, frivolous dispute. And again, if the doctrine, this is an all-or-nothing challenge to it. So the Court has to think, what about the truly frivolous arbitration demand? And I think it's perfectly sensible to say that parties did not agree to have non-bonafide disputes sent to an arbitrator. I don't think that's a reasonable proposition. Again, I have not seen a single contract that says we reserve wholly frivolous, abusive arbitration demands. Well, but you phrase it that way, but you could phrase it differently. What if there's a party that has historically not done well in court, and whatever comes up, they say, I don't want a court to do it, I want an arbitrator to do it. What's wrong with that? I think if the party is as clear and unmistakable in saying that even if the dispute has absolutely no conceivable merit, and everyone knows it's going to be back in court whether the parties like it or not, then if they make that sufficiently clear, then debatably there's a failure under Section 4. Breyer. There's a work contract, lawyer, labor. One of them says, I'll tell you what I want arbitrated, who owns Crimea? Okay. What's the judge supposed to do? The contract has nothing to do with this. So what's the judge supposed to do? The – well, I think if it's a wholly groundless – It says nothing to do with this contract. You want something arbitrated, nothing to do with it. Again, I think the answer, if the court looks at it and says there's nothing for the arbitrator to do, then there's not a failure to comply by not filing an arbitration demand. Okay. So that's the basis of this groundless business. Okay. So he has the same – I have the same question. Okay. So I think – and that's also consistent just with general litigation norms. The – my friend suggests effectively that the FAA carves an exception to Rule 11 principles, and I don't see that anywhere in the text of the FAA. On the contrary, this Court construes the FAA as creating sort of an equal treatment rule. All arbitration agreements are treated just the same as any other agreement. And normally when a party files a frivolous and abusive claim in court, they're sanctioned. They don't win. And I don't think it makes any sense to say that someone can file a frivolous claim, then you can – you reward the claim, you send it to the arbitrator, and then after the arbitrator gets done saying, yeah, that was frivolous, then you sanction them under Rule 11. That's not the case. Ginsburg. If you – if we don't accept your argument, can you tell us there are many, many open questions in this case, right? There are many open questions in this case. So that the Fifth Circuit didn't decide. That's correct. It comes to the Court where the Fifth Circuit almost decided. It explained why Petitioner's argument that there is a delegation clause was wrong, but then didn't actually enter a holding on that, which again is why we think that in a way this is an academic decision in this particular case. Again, it's outside the question presented, so we didn't – we didn't brief the substance of that. Sotomayor, because our answer has a consequence. If we agree with him that there is no statutory provision for wholly groundless exceptions, then all the other questions have to go back and be actually answered. Yes. No, I'm not suggesting that there's not jurisdiction to resolve the question. I'm just saying that in this case it is highly unlikely to have any effect on the ultimate outcome. Well, that's only because you intend to win all the other questions. But we – that's certainly our intent, Your Honor. I can't tell you that. Yeah. But again, the way it comes to the Court is it's saying even for the most frivolous and abusive arbitration demand imaginable, if there is a delegation clause, are the courts actually powerless where they have – their only option is to send it to the arbitrator where they already know the answer, and that's inconsistent with what this Court did in Stolt-Nielsen. Stolt-Nielsen specifically looked, and this is at page 676 and 677 of the Court's opinion, and said if there is only one possible outcome, even where the parties, as they did in that case, expressly agreed that this is a determination for the arbitrator, then you do not send it back to the arbitrator because it's pointless. You decide it yourself. And that's exactly what the Holy Groundless Doctrine is doing, and it's doing it sensibly on the front end when you look at an arbitration demand and you can either say the parties didn't clearly unmistakably intend, when you have a frivolous dispute that has nothing at all to do with the contract, to send it to the arbitrator. It's enforcing the parties' intent. I think it's consistent with section 4. If the Court has no further questions. Roberts Thank you, counsel. Four minutes, Mr. Chamnagam. Chamnagam Thank you, Mr. Chief Justice. Respondent's argument today really assumes the answer to the inquiry when Respondent argues that the parties never would have wanted to arbitrate holy groundless claims of arbitrability. The exact same argument could be made where the underlying substantive claims are frivolous. The argument could be made that the parties would never have wanted for that to go to the arbitrator and would have instead wanted a court to short-circuit that inquiry. But this Court in AT&T Technologies made clear that even if a court thinks that a claim is not arguable, it is still obligated to send that claim to arbitration where the parties have so intended. Kagan It is a little bit different, though, Mr. Chamnagam, because in the case that you said, if it's really groundless, you expect that the arbitrator will get rid of it just as fast as the court will get rid of it. What makes this case a little bit different from that is that here all the arbitrator is going to do is to send it back to the court. And you might think, well, what sense does that make? Chamnagam Well, the arbitrator will make that determination presumably efficiently, will do so at the outset of the proceedings. And, of course, we're assuming here that the parties contracted to have the arbitrator make that determination, presumably for the same reason that parties arbitrate – parties agree to have arbitrators make merits determinations, because they conclude that that will be a more efficient and cheaper way of resolving the relevant issue. And Respondent has no answer for Justice Sotomayor's question about this Court's decision in Renner Center, which provides that where the parties have remitted the issue of arbitrability to the arbitrator, it should be treated just like any other issue. And what Respondent is asking this Court to do is to allow courts to make merits determinations on the issue of arbitrability even in the face of a delegation. And that brings me— Sotomayor Assuming, for the sake of argument only, hypothetically, that we disagree with you, there in fact can be a wholly groundless ground, pardon the pun – do you lose under your question presented? Assuming that I thought, again, presuming only, that you had an arguable claim— Chamnagam —we continue to believe that we have a valid claim of arbitrability and certainly not a wholly groundless one, and if this Court vacates and this case gets to the arbitrator on that issue, we will make that argument. And I would note parenthetically— But you don't, under the question presented, if we disagree with you. We didn't present a question concerning the application of the wholly groundless exception, to be sure. That's obviously a case-specific determination. But I do think that this case illustrates the danger of the wholly groundless exception. There would be a dangerous pliability to that standard regardless of what words this Court puts on a page. And this case illustrates that. And so in addition to the inefficiency of this standard, I would point to that pliability as reasons why this Court, as a policy matter, should not adopt this exception, an exception that, as you point out, Justice Sotomayor, has been applied in only a very small number of cases since the Federal Circuit of all people first recognized this exception about a decade ago. And so it simply would not be worth the candle to filter out the truly frivolous claims, particularly where there are remedies available, sanctions remedies available for Justice Breyer's Crimea hypothetical and any other hypothetical one might imagine. And I think it's very hard to look at the— Breyer, normally in the law, when a judge has something frivolous, he says so. So you have your thing on the one side, so it's like a farm selection clause. But on the other side is a natural reluctance when you have something absolutely frivolous not to say. There are certainly cases in the law more generally— It's not just arbitration. It's all over the place. I recognize that, for instance, in the context of administrative law, there are cases that stand for the proposition that where an administrative agency concludes that it would be futile to have a hearing, the agency has the power not to hold the hearing. But this case is different from any of those cases, because what Respondent is arguing is that where the parties have agreed to have one decisionmaker make a determination, another decisionmaker has the power to short-circuit that determination. And after all, the fundamental policy of the FAA is to enforce arbitration agreements according to their terms. The wholly groundless exception would create a way around that policy, and we would respectfully submit that the judgment should therefore be vacated. Thank you, counsel. The case is submitted.